OPINION
{¶ 1} Plaintiff-appellant Bard Huntsman appeals the October 18, 2004 Judgment Entry of the Stark County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee Perry Local School District Board of Education ("Board").
 STATEMENT OF THE FACTS AND CASE {¶ 2} In the spring of 1997, school administrators with the Perry Local School District learned Huntsman, a junior high science teacher and basketball coach with the District, had allegedly accessed inappropriate, sexually-oriented web sites on school computers, allowed students to access such sites, and viewed these sites with students. As a result of further investigation into Huntsman's conduct, the Board placed him on a leave of absence on April 15, 1997. At its May 16, 1997 meeting, the Board reviewed the evidence obtained during the investigation, and advised Huntsman it would conduct a suspension hearing on May 22, 1997. The Board passed a Resolution on May 22, 1997, suspending Huntsman without pay or benefits.
 {¶ 3} Throughout the summer of 1997, the Board discovered additional information about Huntsman's conduct which resulted in the Board's twice supplementing its original allegations at meetings held on August 12, 1997, and August 26, 1997. At these meetings, the Board resolved to continue Huntsman's suspension and pursue termination.
 {¶ 4} The parties agreed to the appointment of Lee Skidmore as Referee to hear the termination matter. The hearing was originally scheduled for July 24, 1997. After a series of cancellations, Huntsman's counsel sent a correspondence dated October 13, 1997, to the Referee, requesting the hearing be postponed. Via Order dated October 23, 1997, the Referee stayed the proceedings until such was reactivated at Huntsman's request.
 {¶ 5} On December 19, 1997, a Stark County jury found Huntsman guilty of one count gross sexual imposition, a felony of the fourth degree; four counts of disseminating matter harmful to juveniles, felonies of the fourth degree; and one count of disseminating matter harmful to juveniles, a felony of the fifth degree. On December 22, 1997, the trial court entered the convictions, and sentenced Huntsman to a period of incarceration of 5 ½ years and ordered Huntsman to pay a fine of $5,000.00. Huntsman was subsequently transported to the Lorain Correctional Institution, where he remained until December 18, 1998.
 {¶ 6} On January 13, 1998, the Board voted to terminate Appellant. Huntsman's sister, who was designated his Power of Attorney, withdrew his contributions from the State Teachers Retirement System on January 26, 1998. The application for withdrawal from the account included a certification Huntsman was no longer teaching in an Ohio public school, was not under any contract or agreement to teach in the future, and was not on a leave of absence.
 {¶ 7} On February 11, 1998, the Ohio Department of Education ("ODE") sent Huntsman notice of the Ohio State Board of Education's ("State Board") resolution of intent to suspend, revoke or limit and to automatically suspend Huntsman's teaching certificate pursuant R.C.3319.311. On February 24, 1998, pursuant to R.C. Chapter 119, Huntsman, through his former attorney, Anthony DioGuardi II ("DioGuardi'), requested, and was granted, a hearing. However, on July 27, 1999, Huntsman and the State Board entered into an agreement pursuant to which Huntsman's teaching certificate was voluntarily suspended and the hearing was continued during the pendency of the appeal of his criminal convictions.
 {¶ 8} On December 8, 1998, this Court vacated Huntsman's convictions and remanded the matter to the Stark County Court of Common Pleas. Statev. Huntsman (Dec. 7, 1998), Stark App. No. 98-CA-0012, unreported. This Court vacated the convictions on statute of limitations grounds, finding "the trial court should have dismissed the counts pertaining to Brian Daniska, which allegedly occurred in 1983 through 1984, being the second count of the second indictment. However, we agree the acts alleged were part of a course of conduct culminating in sexual abuse of a juvenile, and for this reason, * * * the trial court properly refused to dismiss the other counts." Id. On January 7, 1999, DioGuardi advised ODE of the decision and proposed a continuation of the agreement between Huntsman and the State Board pending final disposition of the criminal matter.
 {¶ 9} Upon remand, on August 13, 1999, the Stark County Court of Common Pleas found Huntsman guilty of two counts of contributing to the unruliness or delinquency of a child, in violation of R.C. 2919.14. On January 19, 2000, DioGuardi sent a letter to ODE indicating Huntsman's 1999 conviction was on appeal. After referencing his January 7, 1999 letter, he wrote: "Upon receipt of a decision, I will advise accordingly."
 {¶ 10} In September and October 2000, while Huntsman's appeal was pending, he attended two meetings of the Board and asked to go into executive session to inquire about his employment status. The Board declined to speak with Huntsman. On November 15, 2000, DioGuardi sent a letter to the Board on Huntsman's behalf, seeking information "whether or not there is any position available for [Huntsman] at this time."
 {¶ 11} Subsequently, on December 5, 2000, ODE sent a correspondence to Huntsman. In the letter, ODE refers to the July, 1998 Agreement between Huntsman and the State Board, then continues, "Our evidence indicates you violated that agreement in 2000 by seeking employment with Perry Local School District". ODE advised Huntsman the State Board intended to suspend, revoke or limit his teaching certificates. Huntsman requested a hearing, which was originally scheduled for October 17-18, 2001, but was rescheduled until December 13-14, 2001, due to DioGuardi's having a prior commitment.
 {¶ 12} Huntsman attended another meeting of the Board on December 19, 2000, and again asked to go into executive session to inquire about his employment status. The Board denied Huntsman's request. In a correspondence dated January 3, 2001, the Board advised Huntsman Ohio law prohibited the school district from employing him. In a letter dated January 17, 2001, Huntsman asserted violations of his due process. In a response dated February 5, 2001, the Board again advised Huntsman he was not employable under Ohio law, and asked Huntsman if he wanted to resume his termination hearing.
 {¶ 13} On September 26, 2001, the Ohio Supreme Court denied Huntsman's motion for reconsideration of the denial of his discretionary appeal,State v. Huntsman (2001), 93 Ohio St.3d 1436, 755 N.E.2d 357, which exhausted Huntsman's appeals from his criminal conviction. By this time, DioGuardi was no longer representing Huntsman.
 {¶ 14} Huntsman obtained new counsel, William Steele ("Steele"), on October 6, 2001. On November 19, 2001, Steele sought a continuance of the December 13-14, 2001 hearing, which ODE opposed, and the Hearing Officer denied. Steele renewed his request for a continuance on December 6, 2001. That same day, ODE opposed the request. The Hearing Officer denied Huntsman's request and the hearing proceeded as scheduled.
 {¶ 15} Following the hearing, Huntsman filed a motion to dismiss, which the Hearing Officer denied. On April 9, 2002, the Hearing Officer issued a report and recommendation, finding Huntsman sexually abused two students, provided alcohol and sexually explicit books and movies to minors, allowed at least one student to view sexually-oriented websites on the school computer, and brutalized at least two students. The Hearing Officer concluded Huntsman's conduct was criminal, immoral and unbecoming to the position of a teacher under R.C. 3319.31(B)(1), and recommended his permanent elementary teaching certificate be revoked.
 {¶ 16} After a May, 2002 meeting, the State Board remanded the case to the Hearing Officer for an opinion on whether the recommendation should extend to Huntsman's eight-year teaching certificate as well as his permanent certificate. On June 14, 2002, the Hearing Officer issued another report and recommendation, which found Huntsman and his attorney were aware the State Board was taking action relative to both of his teaching certificates, and which concluded Huntsman's eight-year certificate should also be revoked.
 {¶ 17} On July 9, 2002, the State Board adopted a Resolution revoking Huntsman's 1993 eight-year elementary certificate and his permanent teaching certificate. On August 7, 2002, Huntsman filed a Notice of Appeal pursuant to R.C. 119.12 in the Stark County Court of Common Pleas. Via Judgment Entry filed June 5, 2003, the trial court affirmed the State Board's decision to revoke Huntsman's teaching certificates, finding said decision was supported by reliable, probative and substantial evidence and was in accordance with law. Huntsman filed a timely Notice of Appeal to this Court. We affirmed. Huntsman v. State Bd. of Educ., Stark App. No. 2003CA00249, 2004-Ohio-3258.
 {¶ 18} On February 4, 2004, Huntsman filed a Complaint for Declaratory Judgment,[1] seeking a final determination of his employment status. The Complaint also included causes of action in breach of contract and wrongful discharge. The Board filed a timely answer which included thirteen affirmative defenses. The parties entered into Stipulations of Fact, which were filed in the original action on December 24, 2002. On August 2, 2004, the Board filed a motion for summary judgment. Huntsman filed a memorandum in opposition thereto. The Board filed a reply brief. Via Judgment Entry filed October 18, 2004, the trial court granted summary judgment in favor of the Board, finding the Board substantially complied with R.C. 3319.16 in its termination of Huntsman's contract.
 {¶ 19} It is from this Judgment Entry Huntsman appeals, raising the following assignments of error:
 {¶ 20} "I. The trial court erred and abused its discretion as a matter of law by acting contrary to the state of Ohio and United States Constitution doctrine of the separation of powers in granting summary judgment based on a standard of substantial compliance.
 {¶ 21} "II. The trial court erred and abused its discretion as a matter of law by holding that the defendant was not required to hold a hearing as required by R.C. 3319.16.
 {¶ 22} "III. The trial court erred and abused its discretion by granting summary judgment when genuine issues of material fact existed as to appellant being denied his constitutional rights of due process and the right to confront his accuser.
 {¶ 23} "IV. The trial court erred in granting summary judgment by hiolding [sic] that appellee had substantially complied with R.C. 3319.16."
 I, II, III, IV {¶ 24} Because our disposition of Huntsman's assignments of error are interrelated, we shall address said assignments together. Huntsman's main contention centers around the trial court's granting of summary judgment in favor of the Board based upon a finding of substantial compliance with R.C. 3319.16.
 {¶ 25} R.C. 3319.16 reads, in pertinent part:
 {¶ 26} "The contract of any teacher employed by the board of education of any city, exempted village, local, county, or joint vocational school district may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. Before terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of his contract with full specification of the grounds for such consideration. The board shall not proceed with formal action to terminate the contract until after the tenth day after receipt of the notice by the teacher. Within ten days after receipt of the notice from the treasurer of the board, the teacher may file with the treasurer a written demand for a hearing before the board or before a referee, and the board shall set a time for the hearing which shall be within thirty days from the date of receipt of the written demand, and the treasurer shall give the teacher at least twenty days' notice in writing of the time and place of the hearing."
 {¶ 27} Huntsman filed the instant declaratory judgment action on February 4, 2004, which was a refiling of a 2002 case. At that point in time, Huntsman had been convicted of contributing to the unruliness or the delinquency of a child, in violation of R.C. 2919.14. In addition, the State Board revoked Huntsman permanent teaching certificate as well as his eight year elementary certificate pursuant to R.C. 3319.39(B). Huntsman cannot be employed as a teacher as he was convicted of one of the crimes enumerated in R.C. 3319.39(B). Furthermore, once Huntsman's teaching certificates were revoked, the Board was not permitted to maintain a continuing contract with him. Although we disagree with the trial court relative to the finding of substantial compliance because the Board's failure to provide Huntsman with a hearing was a fundamental due process right, the issue is now moot because of the aforementioned disqualifying factors. Huntsman no longer has a property interest in his teaching contract with the Board. Based upon his subsequent conviction and revocation of his teaching certificates, we find the Board's conducting of a hearing would be a futile act. Requiring the Board to conduct a hearing at this point is tantamount to mandating a vain act, which the law will not require. Walser v. Dominion Homes, Inc. (June 11, 2001), Delaware App. No. 00-CA-G-11-035, unreported.
 {¶ 28} Huntsman's first, second, third, and fourth assignments of error are overruled.
 {¶ 29} The judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, J., Boggins, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Refiled Stark Country Court of Common Pleas Case No. 2002CV1914.