[Cite as *Amalgamated Transit Union, Local 1385 v. Greater Dayton Regional Transit Auth.*, 2023-Ohio-4330.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL 1385 | : | |
| | : | |
| | : | C.A. No. 29800 |
| Appellant | : | |
| | : | Trial Court Case No. 2018 CV 5282 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| GREATER DAYTON REGIONAL TRANSIT AUTHORITY | : | Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 1, 2023

. . . . . . . . . . .

JOSEPH S. PASS, Attorney for Appellant

MATTHEW L. ROBERTS & LAUREN M. LARRICK, Attorneys for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant Amalgamated Transit Union, Local 1385 ("the Union") appeals from an order of the Montgomery County Court of Common Pleas overruling the Union's motion to enforce the court's January 29, 2019 judgment, which had confirmed three arbitration awards. For the reasons that follow, we will reverse the trial court's order and

remand the cause for an evidentiary hearing on the Union's motion to enforce the trial court's January 29, 2019 judgment.

I.      Facts and Course of Proceedings

{¶ 2} This appeal involves three union members who were terminated from employment by Appellee Greater Dayton Regional Transit Authority ("RTA").  Keith Ashburn was discharged by RTA in December 2016 and Sandra Thompson and Michelle Blair were discharged by RTA in March 2017.  The Union filed grievances against RTA pursuant to the collective bargaining agreement between the Union and RTA.

{¶ 3} On November 16, 2017, the Union won its arbitration relating to Sandra Thompson.  The arbitrator concluded that "[Thompson] is to be returned to work with back pay and benefits and made whole.  The arbitrator will retain jurisdiction for sixty (60) days to help with the implementation of this award if the parties need assistance." The arbitrator did not determine the amount of back pay and benefits to which Thompson was entitled in order to be made whole.

{¶ 4} On January 2, 2018, the Union won its arbitration relating to Keith Ashburn. The arbitrator concluded that "[RTA] is directed to restore [Ashburn] to his former job and make [Ashburn] whole for all wages and benefits lost as a result of having been improperly discharged from employment."  The arbitrator did not determine the amount of wages and benefits to which Ashburn was entitled in order to be made whole.

{¶ 5} On March 28, 2018, the Union won its arbitration relating to Michelle Blair. The arbitrator concluded that "[RTA] shall reinstate [Blair] to her former position without

any loss of seniority and shall make [Blair] whole for all wages and benefits." The arbitrator did not determine the amount of wages and benefits to which Blair was entitled in order to be made whole.

{¶ 6} On November 12, 2018, the Union filed an application in the Montgomery County Common Pleas Court to confirm these three arbitration awards. As part of that application, the Union pointed out that RTA had reinstated the employees but had failed to make them whole with respect to back pay and benefits, as required by the arbitration awards. On January 29, 2019, the trial court entered judgment confirming the three arbitration awards. The court noted that interest on unpaid amounts would accrue in accordance with R.C. 1343.03 or other applicable laws. The trial court further ordered "that all other issues are DISMISSED as outside the scope of this R.C. 2711.09 proceeding."

{¶ 7} On March 23, 2022, the Union filed a "motion for enforcement of final judgment or alternative post judgment motion to determine make whole remedy." As part of that motion, the Union requested that the trial court order RTA to (1) pay Thompson an additional $5,714.27 plus statutory interest for back pay and benefits that were calculated incorrectly by RTA; (2) pay Blair an additional $11,948.20 plus statutory interest for back pay and benefits that were calculated incorrectly by RTA; and (3) pay Ashburn an additional $38,480.05 plus statutory interest for back pay and benefits that were calculated incorrectly by RTA. On April 20, 2022, RTA filed a motion to dismiss the Union's motion.

{¶ 8} On May 8, 2023, the trial court granted RTA's motion to dismiss and

overruled the Union's motion to enforce the January 29, 2019 judgment. The trial court incorporated by reference its June 21, 2021 ruling in Montgomery C.P. Case No. 2018-CV-1904, in which it had found that the acceptance of RTA checks by these aggrieved employees "constitute[d] a ratification of the arbitrator's awards and end[ed] the justiciable controversy regarding those grievances."

{¶ 9} The Union filed a timely notice of appeal from the trial court's May 8, 2023 judgment.

II.     The Trial Court Erred in Overruling the Union's Motion to Enforce the Trial Court's Judgment Based on The Doctrine of Ratification

{¶ 10} The Union's sole assignment of error states:

> The Montgomery County Court of Common Pleas committed reversible error by granting Greater Dayton Regional Transit Authority's motion to dismiss the Amalgamated Transit Union 1385's motion to enforce the January 29, 2019 judgment entry confirming the labor arbitration award issued pursuant to the parties' collective bargaining agreement.

{¶ 11} In its May 8, 2023 judgment overruling the Union's motion to enforce the trial court's January 29, 2019 judgment, the trial court referenced and relied on the reasoning expressed in its June 21, 2021 ruling in Montgomery C.P. Case No. 2018-CV-1904. There, the trial court stated, in relevant part:

> RTA asserts that it has made Sandra Thompson, Keith Ashburn, Michelle Blair, and Michael Humerick whole and Local 1385 is asking this

Court to award additional damages. * * * Local 1385 does not dispute that RTA made these payments and they were accepted by the grieving parties. RTA argues that Local 1385 is asking this Court to expand the judgment and award new damages. * * * The Court agrees that the acceptance of RTA checks by these four employees constitutes a ratification of the arbitrator's awards and ends the justiciable controversy regarding those grievances. * * * Not only are these arbitration awards not part of this Court's judgment that the Court of Appeals affirmed, there is no longer a justiciable dispute with respect to those grievances. Thus, the Court DENIES Local 1385's motion to enforce those judgments.

June 21, 2021 Decision in Case No. 2018-CV-1904, p. 4, citing *Geiger v. Morgan Stanley DW, Inc.*, 10th Dist. Franklin No. 09AP-608, 2010-Ohio-2850, ¶ 15-16.

{¶ 12} The Union contends that "[t]he trial court committed reversible error by holding that an individual employee was the party and therefore when the individual employee accepted some payment from RTA (regardless of amount), the arbitration award was ratified by [the Union], thereby rendering the Union's claims non-justiciable." Appellant's Brief, p. 6. The Union argues that the trial court's erroneous ruling creates a host of unintended consequences that must be avoided. *Id.* at 17-20.

{¶ 13} RTA responds that the trial court's "decision is consistent with well-settled case law in Ohio holding that a plaintiff has no right to modify an arbitration award or seek additional damages under R.C. 2711.09 if the plaintiff already ratified the award by accepting payment or otherwise reaping the benefit of the award." Appellee's Brief, p.

7. RTA also contends that, "[i]f this Court were to determine that the trial court has jurisdiction over the Union's claims, it would have to hold a hearing and allow the RTA, the Union, and the employees to present testimony and evidence so this Court could determine whether they are entitled to additional damages, and if so, the amount of such additional damages. The court would therefore have to perform the same functions the parties specifically and contractually designated to arbitrators." *Id.* at 15-16.

{¶ 14} "Ratification has been defined as the approval by act, word, or conduct of that which was improperly done." (Citation omitted.) *AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*, 81 Ohio App.3d 217, 221, 610 N.E.2d 1032 (9th Dist.1992). "The intention to ratify is an essential element, and is at the foundation of the doctrine of ratification." *Id.*, citing *Jeffords v. John Hancock Mut. Life Ins. Co.*, 19 Ohio Law Abs. 701, 702 (2d Dist.1935). We agree with the Union that the three employees' acceptance of payments from RTA, by itself, did not constitute ratification on the part of the Union that RTA's payments had made the employees whole with respect to wages and benefits, as required by the arbitration awards.

{¶ 15} It is unclear in the record whether RTA's payments to the three employees were made by direct deposit or check. Moreover, it is unclear from the evidence in the record whether RTA's payments were made directly to the employees or sent to the Union, which then forwarded the payments to the employees. What is clear, however, is that the Union, not the three employees, was the party opposing RTA at the arbitrations and the only party that could "ratify" RTA's payments.

{¶ 16} In *Leon v. Boardman Twp.*, 100 Ohio St.3d 335, 2003-Ohio-6466, 800

N.E.2d 12, ¶ 18, a union filed a grievance on behalf of an employee. The grievance was submitted to an arbitrator, who reduced the employee's discharge to a suspension and reinstated him to his position as a police officer but declined to award any back pay. The employee, on his own behalf, filed a motion in the common pleas court to vacate the award when his union declined the employee's request for further representation regarding the issue of back pay. The trial court dismissed the employee's application on the basis that he had not been a party to the arbitration regarding his discharge and, therefore, he lacked "standing to bring a motion to vacate the arbitration decision." *Id.* at ¶ 2. The Seventh District Court of Appeals affirmed the trial court's decision, concluding that an employee has no standing to challenge the arbitration award and is not a party to the arbitration proceedings as contemplated by R.C. 2711.10 absent language in the collective bargaining agreement allowing the employee to have control over the arbitration proceedings. *Id.* at ¶ 3. The employee appealed to the Ohio Supreme Court.

{¶ 17} The Supreme Court focused on the well-established principle that "an aggrieved worker whose employment is governed by a collective bargaining agreement that provides for binding arbitration will generally be deemed to have relinquished his or her right to act independently of the union in all matters related to or arising from the contract, except to the limited extent that the agreement explicitly provides to the contrary." *Id.* at ¶ 17. Based on this principle, the Court held that "when an employee's discharge or grievance is arbitrated between an employer and a union under the terms of a collective bargaining agreement, the aggrieved employee does not have standing to petition a court to vacate the award pursuant to R.C. 2711.10, unless the collective

bargaining agreement expressly gives the employee an independent right to submit disputes to arbitration." *Id.* at ¶ 18.

**{¶ 18}** RTA does not contest the fact that it and the Union were the two parties to all three arbitration proceedings at issue in this appeal. RTA contends, however, that the employees retained the power to accept payment from RTA and bind the Union as a result thereof through the doctrine of ratification. But *Leon* makes it clear that, absent a provision in the collective bargaining agreement giving the employee this independent power, RTA must deal directly with the Union, not the employee. As the Union accurately points out, allowing an employee to essentially settle or ratify his or her claim for less than what an arbitrator awarded by simply accepting a payment from an employer would lead to several practical difficulties. Just as an employee does not have standing to challenge an arbitration award unless the collective bargaining agreement provides otherwise, an employer cannot escape the effect of an arbitration award by sending a partial payment to an employee in the hope that he or she will accept it and somehow bind the Union.

**{¶ 19}** There is no evidence in the record that the Union played any role in calculating the amount that RTA paid the three employees. Moreover, there is no evidence in the record that the Union took any actions or made any statements that could reasonably be construed as an intent on the part of the Union to ratify the payments made by RTA as the correct amounts necessary to make the three employees whole, as required by the arbitration awards. Rather, the Union's actions in moving to confirm the awards and then moving to enforce the January 29, 2019 judgment made it clear that the Union did not agree with RTA's position that RTA's payments had made the employees

whole with regard to back pay and benefits. Therefore, the trial court erred in finding that the doctrine of ratification precluded it from considering the merits of the Union's motion to enforce the January 29, 2019 judgment.

{¶ 20} The cases cited by RTA in favor of the trial court's ratification finding are inapposite and unpersuasive. In *Luby v. Safeco Ins. Cos.*, 8th Dist. Cuyahoga No. 52874, 1987 WL 19250 (Oct. 29, 1987), the appellant was injured through the negligence of an uninsured motorist. The appellant demanded arbitration and was awarded $19,000, which was duly paid to and accepted by the appellant. The appellant then moved to confirm the award in the common pleas court to pursue prejudgment interest. The trial court granted summary judgment against the appellant on the confirmation application. The Eighth District affirmed, concluding that "[h]aving received and accepted payment in satisfaction of the award, appellant ratified the arbitration award, and in applying for confirmation, presented no case or controversy to the court below." *Id.* at *2. The facts in *Luby* involved a situation in which the arbitrator awarded a specific amount, and that entire amount was paid. That was not the case here. Further, the *Luby* case involved a payment to the actual party to the arbitration, which did not occur here.

{¶ 21} In *Geiger v. Morgan Stanley DW, Inc.*, 10th Dist. Franklin No. 09AP-608, 2010-Ohio-2850, the appellant worked for Morgan Stanley as a commissioned financial investment advisor. He resigned under duress and filed an arbitration statement of claim against his former employer alleging wrongful termination, coercion, and unfair competition. Ultimately, the arbitration panel rendered a determination nominally in favor

of Geiger, awarding him $3,000 plus interest. Morgan Stanley tendered a check for the entire award amount including interest, and Geiger accepted and cashed the check. Geiger then filed a motion in the court of common pleas to modify the arbitration award. The trial court denied Geiger's motion to modify.

{¶ 22} On appeal, the Tenth District affirmed the trial court's judgment based on the principle that there is no right to obtain modification or confirmation of an arbitration award "when the party so moving has ratified the award by accepting payment or otherwise reaping the full benefit of the award." *Id.* at ¶ 16, citing *Luby*. Consequently, the *Geiger* court concluded that "Geiger has fully accepted the benefits of the arbitration order and, having thus ratified it, does not have standing to pursue modification of that order in the court of common pleas." *Id.* at ¶ 17. The facts in *Geiger* involved a situation in which the arbitrator had awarded a specific amount, and that entire amount was paid. That was not the case here. Further, the *Geiger* case involved a payment to the actual party to the arbitration, which did not occur here.

{¶ 23} In *Weaver Workshop and Support Assn., OEA-NEA v. Summit Cty. Bd. of Mental Retardation and Dev. Disabilities*, 9th Dist. Summit No. 19780, 2000 WL 799097 (June 21, 2000), a union filed a grievance on behalf of an employee who had received a two-day suspension from work. Pursuant to the collective bargaining agreement, the grievance was submitted to arbitration. The arbitrator sustained the grievance and stated that the employer had failed to prove by clear and convincing evidence that the employees' disciplinary suspension of two days was for just cause. The union and the employee filed a motion to confirm the arbitration award. While the motion was pending,

the employer added two days of pay to the employee's regular paycheck, which the employee cashed. The employer filed a motion to dismiss, which the trial court granted based on the *Luby* decision.

{¶ 24} On appeal, the Ninth District concluded that once the employee "accepted the payment for the two-days of missed work, she ratified the arbitration award, thereby, leaving no case or controversy for the trial court to decide." *Id.* at *2. Further, the Ninth District noted that the motion to confirm was instead a motion to modify, because the union and the employee "were, in effect, attempting to modify or correct the arbitrator's award to include reimbursement for time and a-half and prejudgment interest." *Id.* Since the union and the employee failed to bring their motion within three months of the arbitrator's award, the court could not modify the arbitration award. *Id.*, citing R.C. 2711.13. Unlike the facts in *Weaver*, the employees in the instant case were not parties to the arbitration or the common pleas court case. Also, the arbitrators' awards in the record before us, unlike in *Weaver*, did not award a sum certain but instead ordered that RTA make the employees whole in terms of wages and benefits. Finally, *Weaver* was decided before the Ohio Supreme Court's *Leon* decision.

{¶ 25} RTA also contends that the Union should have filed a grievance over RTA's alleged failure to pay the full amount of the employees' benefits and back pay rather than filing a motion to enforce the trial court's judgment. But that would not make sense. The Union had already submitted grievances to binding arbitration over the termination of the employees. RTA, after losing the arbitrations, unilaterally determined how much it believed would make the three employees whole. The Union (and the employees)

disagreed with RTA's calculation and believed that RTA had underpaid the employees and therefore had not complied with the arbitration awards, which had been confirmed as part of the trial court's January 29, 2019 judgment. To make the Union start the whole process over by having to file a separate grievance over the correct amount of backpay and benefits - when any alleged error in the calculation was made solely by RTA - would result in a piecemeal arbitration approach that inevitably would frustrate the purpose of submitting matters to binding arbitration in the first place. We believe the better approach is the one taken by the Eighth District in *City of Cleveland v. Laborers Internatl. Union Local 1099*, 2018-Ohio-161, 104 N.E.3d 890 (8th Dist.).

{¶ 26} In *City of Cleveland*, the union filed a grievance against the City of Cleveland, alleging that the city had violated the parties' collective bargaining agreement by having private contractors perform work traditionally performed by the union. The arbitrator determined that the city had violated its collective bargaining agreement and ordered the city to pay "reasonable and demonstrable lost back pay" to the bargaining unit members. *Id.* at ¶ 2. The arbitrator retained jurisdiction for 60 days to resolve any issues arising from implementation of the award.

{¶ 27} Ultimately, the city appealed the arbitrator's decision by filing with the common pleas court a motion to vacate the arbitrator's award. The union then filed an application to confirm the arbitrator's award. The trial court denied the city's motion to vacate the award and granted the union's motion to confirm the award. The Eighth District affirmed the trial court's judgment. *Id.* at ¶ 3-4.

{¶ 28} Following the Eighth District's affirmance of the trial court's judgment, the

union returned to the arbitrator with a request for a hearing on the back pay award. The arbitrator found that he lacked jurisdiction to issue an additional award. *Id.* at ¶ 5-6. The union then filed with the common pleas court a motion to show cause or alternative post-judgment motion to determine reasonable and demonstrable lost back pay. *Id.* at ¶ 7. The city denied it was violating the arbitrator's decision and moved to dismiss the union's complaint for lack of jurisdiction. The trial court awarded reasonable and demonstrable lost back pay in the amount of $307,797.86. The city again appealed to the Eighth District Court of Appeals.

{¶ 29} The Eighth District began by explaining that "[a]rbitration procedures are governed by R.C. Chapter 2711. And R.C. 2711.09 through 2711.14 provide the only procedures for challenges to, or arguments in support of, an arbitrator's decision." *City of Cleveland,* 2018-Ohio-161, 104 N.E.3d 890, at ¶ 12. According to the Eighth District, "[o]nce an arbitration is completed, the jurisdiction of the trial court is limited to confirmation, vacation, modification, or enforcement of the award, and only on the terms provided by the statute." *Id.*, citing *Lockhart v. Am. Res. Ins. Co.*, 2 Ohio App.3d 99, 101, 440 N.E.2d 1210 (8th Dist.1981), paragraph two of the syllabus.

{¶ 30} Based on the limited options available to the trial court, the Eighth District concluded:

> Here, we have an arbitrator's award that has been confirmed, and pursuant to R.C. 2711.12, it has the effect of a judgment and can be enforced by the trial court. In considering Local 1099's motion to show cause or alternative post-judgment motion to determine "reasonable and

demonstrable lost back pay," reviewing the parties' briefs and responses, examining the evidence, and awarding the union $309,797.86, the trial court did not improperly modify the arbitrator's award of "reasonable and demonstrable lost back pay." Rather, *the court exercised its authority to issue orders pursuant to the rules of civil procedure and its inherent power to interpret and enforce a judgment of the court. Such action was necessary to provide meaning and effect to the judgment and ensure that litigation progresses toward final resolution. Without the court's order, the arbitration award of "reasonable and demonstrable lost back pay" was meaningless and unenforceable.*

(Emphasis added.) *Id.* at ¶ 26.

{¶ 31} Like the situation in *City of Cleveland*, if the trial court does not determine the amount that RTA should have paid the three employees to make them whole with respect to wages and benefits, there will be no meaning and effect to the arbitration awards or the trial court's January 29, 2019 judgment, which confirmed the arbitration awards. Rather, RTA would be able to make its own determination of what makes the employees "whole" and unilaterally impose that amount on the Union and the employees, while the Union would have no meaningful opportunity to dispute whether these payments satisfied the arbitration awards.

{¶ 32} Ideally, both parties would have submitted to the arbitrators their respective arguments regarding how much money was required to be paid by RTA to the employees to make them whole in the event the arbitrators ruled in favor of the Union. If the parties

had done that, then the arbitrators could have decided the proper amounts of back wages and benefits and included those amounts as part of the arbitration awards. Then, if any party disagreed with the amount in the arbitrator's award, that party could have filed a motion to modify the award in the common pleas court pursuant to R.C. 2711.11. But that did not happen here. While the way in which this case proceeded was less than ideal, we do not see anything in the record or the law that precluded the trial court from holding an evidentiary hearing and determining the proper amount of money that should have been paid by RTA to comply with the arbitrator's awards, which the trial court had confirmed in its January 29, 2019 judgment. As the Eighth District pointed out, if the trial court does not do so, the arbitrators' awards essentially would be rendered meaningless and unenforceable. *City of Cleveland* at ¶ 26.

**{¶ 33}** The sole assignment of error is sustained.

### III. Conclusion

**{¶ 34}** Having sustained the sole assignment of error, we will reverse the judgment of the trial court and remand the cause to the trial court to conduct an evidentiary hearing on the Union's motion to enforce the trial court's January 29, 2019 judgment.

. . . . . . . . . . . . .

HUFFMAN, J., concurs.

TUCKER, J., concurs:

**{¶ 35}** Though I concur in the well-reasoned majority opinion, I write separately to

state that the evidence at the required evidentiary hearing could establish that the Union, by act, word, or conduct, ratified the payment made to the three employees. And, if the evidence were to support this conclusion, the employees would not be entitled to further damages.